Next case is Ingevity Corporation v. BASF, 2024-1577. Mr. Earnhardt. Thank you, and may it please the Court. I would like to begin by jumping straight to Issue 3 of our appeal, and in particular to explain why it was an error of law for the Ingevity cannot be held liable for enforcing what it believed, in good faith, its patent rights to be. Now, that argument has two parts. The first question is, what are the relevant patent rights here? But that depends upon the jury's finding that there was a staple, right? It does not, Your Honor, and there's some confusion in the briefing about that. The parties agreed before the pretrial conference that the issue of patent immunity and it would be reserved for the Court. That issue was never put to the jury, and the jury verdict about whether the good was, in fact, staple or non-staple cannot answer the question of whether Ingevity, in good faith, believed the good was non-staple. And I think that's the critical point, because that question is, what is the relevant patent rights here? And it seemed to me the arguments were different below than the argument you're making here on appeal. They're not. The arguments that I'm making today and in our brief were exactly the same. That was misleading, frankly, in my colleague's, my friend's brief. I'll walk the Court through it. Are you relying on a summary judgment motion for preserving the immune defense you're arguing to us right now, or what are you relying on? Several things. It is the summary judgment motion. It's also post-trial judgment as a matter of law. It's also the post-trial findings of fact and conclusions of law on the separate immunity procedure that happened. It's confusing. This was a strange case, and I think it's important that I walk you through the context of what happened here. So before the pretrial conference, the parties agreed that immunity issues, Roam-Haas immunity, which I would like to explain, and or Pennington, would be reserved for the Court, not the jury. The parties agreed to that. The District Court references that agreement at appendix page 48 and cites back to the docket, the District Court document 496 at page 1503. So the immunity issues are reserved for the Court. Ingevity presented that legal issue before trial by moving for summary judgment. I urge the Court to reach pages 18 and 19 of Ingevity's summary judgment brief, where it says exactly what I'm saying here today, including that, quote, even if the Court were to disagree and a fact finder ultimately concluded that they were staple articles, BASF can point to no evidence that Ingevity's conduct pursuant to what Ingevity believed to be its patent rights, even if Ingevity turns out to be mistaken about their scope, was objectively and subjectively basis. That's a quote from Ingevity's summary judgment brief. Ingevity did not then disavow that at summary judgment. They say that in their papers. That's simply not true. If you read the summary judgment argument at lines 10-3 through 10-6, Ingevity argued under the patent cases, the only thing that is excluded from the good faith immunity would be bad faith litigation, sham litigation, or Walker process, none of which has been fled here. The District Court on summary judgment directly rejected that argument. A quote from the District Court's opinion at appendix 43, quote, just because Ingevity is engaging in valid patent enforcement activities does not mean it can violate the antitrust laws. So that ruling there on summary judgment was a clear error of law under the recent Supreme Court case to Pree versus Younger. It's directly appealable. You don't have to move again because that's a clear error of law. You can directly appeal it. So that's error number one. But in terms of the summary judgment, I thought that the District Court kind of reserved a final determination. Is that accurate? No, because we were moving for summary judgment. He denied that motion for summary judgment. The parties had agreed that it would be a bench issue, not a jury issue. So the effect of not granting the summary judgment was to deny it. And he denied it on a legal basis that we say is error. So that's appealable. But even if it's not, even if that was punted in some way by the District Court, Ingevity raised this issue again after trial in its judgment as a matter of law briefing. Ingevity again raised this issue. And I point the court to the docket 548. So you're talking about the 50B. What about 10 points to where it is in the 50A? There are two instances. There's the docket 548 filed on September 13, 2021 right after trial, where Ingevity said at page 6, even if there were substantial evidence that fuel, vapor, canister, honeycombs are staple goods, all of BASF's claims must be dismissed. There is not evidence that Ingevity engaged in anything other than good faith efforts. Can you give us J.A. pages? Because you're giving us, like, docket numbers. I want J.A. pages because we're on appeal. That briefing is not in the joint appendix. It's a brief that Ingevity filed. That's why there are no J.A. pages you're giving me right now. There is a reference to that at appendix page 50 in which the court rejects those arguments. The court at appendix page 50 says, I conclude that neither Norr Pennington nor the patent laws immunize Ingevity's conduct. That is a response to the filing we made at the docket 548 on September 13, 2021, and the filing we made at docket 576 on November 4, 2021. So, Your Honors, the parties agreed the court would decide this issue, not the jury. Ingevity raised it to the court first in summary judgment, which is the mechanism for doing that. The court denied that. Can I just ask you, what is the issue? The issue, are you saying that if you're in this tying context, any company accused of tying under the law could argue that its acts were lawful because it believed it was merely enforcing its patent rights? Is that the doctrine you're asking us to accept? No, that is not the doctrine. Not any case involved in tying. The cases are very clear, and 217D actually says this, that if the tying is a tie that expands your patent monopoly, then you can be liable under the antitrust laws. If it does not, you are immune. And I would like to point the court. But isn't that question answered by the other two issues, which we kind of skipped over when we started with issue three? No. If there's tying, the jury made determinations with respect to the conduct of your client here, and that included going beyond just enforcing your patent rights, going beyond to other uses. That's the whole point of this. I disagree, and let me, if I could explain why. So, the relevant patent right at issue here is the one recognized by the Supreme Court in Roman Haas. The facts of that case are extremely important, and I recommend that case to your honors. In that case, Roman Haas had a patent for how to apply the pesticide propranol, how to spray it. Roman and Haas gave an authorization to practice that method patent only by an implied license that could be obtained by buying the propranol itself, which was not patented and could not be. Otherwise, they sued. Dawson, the plaintiff, argued that was tying, and that allowed Roman Haas to control the propranol product market by virtue of its method patent. The Supreme Court rejected Dawson's argument, and I think it's important to understand the two holdings the Supreme Court made. The first thing the Supreme Court says on page 201 of the opinion is a patentee may sell a non-staple article himself while enjoying others from marketing that same good without his authorization. By doing so, he is able to eliminate competitors and thereby to control the market for that product. The next page of the opinion, on page 202, the Supreme Court rejects the argument that BASF makes here that somehow conduct is different from communication in this context. It says, quote, the linkage of the sale of the product and the license to the patent in a single transaction, which, this is the Supreme Court's language, was characterized pejoratively as tying is permitted by section 271D. So that's the first fundamental point. The conduct of monopolizing the market for a non-staple good, not merely through communication, but that conduct is protected by Roman Haas, okay? Second point, what protection does that patent right afford to Ingevity? Well, the good faith enforcement of your patent rights, even if you turn out to be wrong about what the scope of your patent rights are, is immune for liability. This Court has enforced that principle time and time again. It's worth another quote. In the Lightnetics case, this Court held, a patentee acting in good faith on its belief as to the nature and scope of its rights is fully permitted to press those rights, even though he may misconceive what those rights are. Time and again, this Court has held that. The Golan case, the Virginia Panel case, the Micon Gaming case, it's a core principle of patent law. But didn't the jury decide the question of intent adverse to you? The jury did not. The issue of intent, the issue of immunity was never presented to the jury. It expressly was reserved for the Court. And the jury's finding that the honeycombs are in fact staple goods cannot answer the question as to whether Ingevity believed in good faith they were non-staple goods. And in fact, that was never even alleged, that they were non-staple goods, that Ingevity did not believe in good faith that they were non-staple goods. If it was, if the jury by itself determining that you were wrong about your patent rights was enough to show that you knew you were wrong about your patent rights, then this protection for being able to enforce your patent rights in good faith would be completely illusory. Now, no Court has ever held that the patent rights given by Roman Haas are somehow second-class rights, that don't enjoy the same protection that you're not allowed to misapprehend that in good faith. But that it has to be that you are, because a right in which you forfeit it if you get it wrong in good faith is no right at all. And so simply, Your Honors, even if the honeycombs actually are staple goods, and we don't believe that BASF carried its burden to show that they are, but even if you accept that they are staple goods, Ingevity is immune from treating them like non-staple goods unless that was done in bad faith, which requires a showing of subjective and objective baselessness, which is clearly not true here. Ingevity believed that it was selling a product, the only purpose of which was to practice its patent. That issue was never put to the jury. The judge ruled as a matter of law that the patent immunity defense should not apply, and we respectfully suggest that that should be overturned. We want to ask you hopefully some more questions beyond just what you want to talk about here, though, too. So do you agree with BASF's contention that the patent invalidity issue is moot if we were to affirm on the jury's tying verdict? If you were to affirm on the tying verdict, yes, the invalidity issue would be moot for this appeal. Now, I will say that there's a six-year statute of limitations under the patent laws. Our patent didn't expire until 2022. So hypothetically, there may be some claim that we haven't brought that we could bring if the invalidity decision was reversed. So it's not moot in the broader sense, but for this appeal, if they're moot. Well, what are the consequences of finding the tying? Let's assume you lose on the immunity as well as the tying. What are the consequences of that? The patent's unenforceable, right? Correct. I agree with that. Yeah. And what about just another housekeeping to follow up on Doug Cunningham? What about the tortious interference verdict? That is mooted out if we were to agree with your friend on the first issue, correct? That is correct. That would be mooted out. If I have time, well, I don't know where I am in the time. If I could say a few words about damages before I... Well, it's your time. And do I have five minutes left for rebuttal or am I into my rebuttal time? You're into your rebuttal time. That's what the orange light is for. Okay. I'll save it then. Thank you. Tristan, let's see. Good morning. May it please the Court. Your Honor, Zangevity created what the district court rightly called a classic tying arrangement. They claim to have invented not a new kind of carbon honeycomb, but a new method of combining existing adsorbents that were well known in the art. They then told customers, if you want to license this method, the only way to do that is to buy all of your adsorbents, including carbon honeycombs, exclusively from us. The jury, applying instructions on which the parties agreed, found Zangevity liable under the antitrust laws. Zangevity's arguments on appeal basically take two forms. One is attempting to relitigate evidentiary and credibility issues that were resolved by the jury. That's improper under the substantial evidence standard. And the second is in the case of the immunity argument that my friend spent all his time on. This is a new argument that was repeatedly disavowed before the district court. Can we talk about whether or not it was preserved? Because I, all of us have been having a conversation with opposing counsel about whether or not it was preserved. And he pointed us to some places in summary judgment. He said also in J-Mall. I want you to kind of walk us through whether or not it really was actually preserved. Absolutely. So I think there are three places I'd ask the court to look in the record to see very clearly that this was not preserved. And just to be clear about what was not preserved, what I understand their argument now to be is even if we engaged in time, and even if what we tied was a staple good, as the jury found, we are still immune if we did that in good faith. That's their argument on appeal. So the first place I'd ask the court to look is at the agreed jury instruction. It's on page 9031 of the joint appendix. It's instruction 4.1. Can you say that page number again? 9031. And my friend said immunity was never presented to the jury. I frankly don't know how they can say that, given that there was an instruction on this subject. It's patent enforcement in the exercise of constitutional rights. It first explains Ingevity has the right to enforce its patents, including through communications to customers. But then it goes on. It says Ingevity has no right to engage in conduct such as tying or exclusive dealing that unlawfully restricts competition beyond the scope of the patent monopoly. And so it said patent communications, immune. Tying and exclusive dealing, not immune. And there were no challenges to that jury? That's right. This was an agreed jury instruction. The district court noted that in its post-trial work. The way my friend tries to get around that is to say, well, we made this argument at summary judgment and it was definitively rejected. And that's why we didn't have to object to the jury instruction. So this is the second place I'd ask you to look. Pages 42 to 43 of the joint appendix could not be less definitive about this issue. The court says, quote, I do not think I can decide this issue more than tentatively on the present record. Again, on the next page, I think a definitive Norr-Pennington ruling must await hearing the evidence at trial. So not definitively rejected at summary judgment. And why is that? And this is the third place I'd ask you to look in the record. Pages 7925 to 7926 of the joint appendix. This is the argument on summary judgment. And we had some back and forth about what exactly is Ingevity arguing. It wasn't clear. And the district court posed this question directly to Ingevity's counsel. The court said, I don't think Ingevity is saying tying and exclusive dealing are immunized. But maybe I'm wrong. Turn to counsel. Are you saying tying and exclusive dealing are immunized? Their answer, they said, threats of litigation are immunized. And the reason we're invoking immunity here, I'm paraphrasing. You can read the answer. It's a little bit jumbled, but this is what they said. They said, we're invoking immunity because all we did is threaten litigation. And threats of litigation are immune. And the court then said, that's a helpful thing to have said. And that's the reason why I'm almost certainly not going to grant summary judgment. Because you're telling me one particular activity, threats of litigation is immunized. Other activities that go beyond threats of litigation might not be immunized. And there's a factual dispute about whether Ingevity's conduct was limited to threats of litigation or whether it went beyond that into actual time. So that's why the district court denied summary judgment. That's why the court said, there are factual issues. I can't resolve immunity without factual findings at trial. And that's why we had this agreed jury instruction that drew exactly the line Ingevity had drawn at that argument, saying threats of litigation are immune. Patent communications are immune. But tying is not immune. So that's how this case was litigated throughout. And if you're done with the forfeiture kind of question, what say you to leaving aside forfeiture to your friend's reference to Roman Hoss and the helps him here. In Roman Hoss, the court found propanil was a non-staple good. It had no substantial non-infringing use. That's why the conduct in Roman Hoss wasn't even illegal. There was no issue of immunity there. There was no issue of good faith. The court said propanil is a non-staple good. If the jury had agreed with Ingevity that the honeycombs here are a non-staple good, then we would agree under Roman Hoss that conduct is not illegal. The jury disagreed with that, said it's a staple good. That means Roman Hoss doesn't help them. What they need is a case that says even if you engage in tying with a non-staple good, you're immune if you do that in good faith. There is no case that has ever held that. Or has any case, I mean, you could help me out by saying is there any case that's rejected that theory? So I think there are, maybe not quite as clearly, you know, in terms of a holding as I might like. But there are a number of cases. We cited the ISO case and the Atari case in our briefs that say explicitly, albeit in dicta, that tying and bad faith patent enforcement are separate bases for antitrust liability. And in fact, Ingevity conceded that in its post-trial briefing at page 11241 of the joint appendix. They said, quote, Ingevity agrees that tying and bad faith patent enforcement are separate bases for liability. So that's directly contrary to their new immunity argument. There's also, I think helpful on this is the Virginia panel decision. In Virginia panel, there was a variety of anti-competitive conduct alleged, including both threats of litigation and tying. And the court first analyzed the threats of litigation and said those were immune because they were made in good faith. The court did not extend that analysis to tying. It went on and dealt with tying separately. There was no discussion of good faith in the context of tying. All of the cases my friend cites about immunity, every single immunity case involves either litigation, the conduct was bringing suit on the patent, or pre-litigation communications, things like cease and desist letters, notices to potential infringers. That is the only conduct that this court or any court that I'm aware of has ever held is subject to immunity. No court has ever held that actual tying of a staple good is subject to immunity. So if there are no more questions about that issue, I'm happy to answer questions about any other issue. My friend indicated that he might on rebuttal address damages, so it might behoove me to say a few words about damages. Well, can you also respond to the point that, just the housekeeping point that Judge Cunningham raised about whether or not the 102G goes away if you prevail on the other? That's right. I think my friend agreed with that, so we're on the same page. If the court affirms the finding of unlawful tying, then patent validity issue becomes moot because there's no possibility of enforcement given the misuse. Tortious interference also becomes moot because there are no additional damages. Because the damages are subsumed within the antitrust damages. That's exactly right, Your Honor. Okay. And if he didn't talk about damages on his opening, he's not going to get to talk about it on his rebuttal. Fair enough, Your Honor. In that case, I think I've responded to everything that you did talk about in the opening, so I'll just ask the court if Your Honors have any questions about any of the other issues that were raised in the briefing, I'm happy to address them. In that case, I'll see you the rest of my time. Thank you. All right. Thank you. Mr. Aronhoff, you have a couple of minutes left. Thank you very much. There's some sleight of hand going on here. There are two separate issues, Norr Pennington, which is one basis for immunity, and Roman Haas, which is another. So all of the statements about Norr Pennington and statements in communications are not relevant to the rulings about Roman Haas. Yeah, but in fairness, we asked him the question about Roman Haas, he responded, it's responded to in the brief. I understand, but that's not the argument I'm making today. My argument I'm making today is about Roman Haas, which is about conduct, and whether if you are wrong about the staple versus non-staple comparison, that right is important enough as all the other rights for you to have immunity. Is there any case law specifically, though, when there's actual time of a staple good and immunity applies? Do you have a case on that? There's no case either way. There's no case. This would be, let me just very quickly address the waiver issue. The jury wasn't instructed on the argument I'm making today. They were instructed on the substance of staple versus non-staple, not the issue of whether if Ingevity gets it wrong, does it have to be in bad faith for there to be immunity. There wasn't an instruction on that. That's perfectly clear. I would urge the Court to read the cites I said in my opening. We preserved this every way. There was an agreement this would be presented to the Court. We did it before trial. We did it after trial. There's no other way we could have presented this argument. It was preserved. On this issue, if this verdict is allowed to stand, it would be a massive encroachment on the rights of patent holders and a massive expansion of antitrust law. I'm not aware of any case in any federal circuit holding that you can liable under the antitrust laws if you misapprehend the scope of your patent rights in good faith. None. Compare what this Court said in Golan to this case. In Golan, there was an expired patent. The Supreme Court in Brulette said enforcing an expired patent is a tie economically. That's what you're doing. This Court in Golan said, okay, it's a tie, but not if you're doing it in good faith. There, they just got the date of the patent expiration wrong. This Court said, yes, if you knew that and you intended to enforce your expired patent, you can be liable under the antitrust laws, but not if you do it in good faith. That's directly analogous to what's happening here. If this decision is affirmed on this record, it would leave patentees with an impossible Hobson's choice. Either you forego the right to monopolize the market for what you truly believe to be non-staple goods under Roman Haas. You give that away, or you risk liability with treble damages if later on someone points to what you believe to be trivial, not actual uses to prove that you were wrong about your non-staple good determination. That will have a massive chilling effect on the ability and willingness of companies to do what Roman Haas says Congress has said they're entitled to do, which is monopolize the market for a non-staple good. This would be the first case that I'm aware of, and they don't cite any, ever holding that if you get your Roman Haas rights wrong, you're liable under the antitrust laws. And that will have a terrible effect on the ability of patent holders to enforce their rights. Thank you, Your Honors. Thank you to both counsel. Okay, system move.